01

02

03

04

05

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT J. LAWRENCE,                    )      CASE NO. C06-1083-RSL-MAT
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )      REPORT AND RECOMMENDATION
                                       )      RE: SOCIAL SECURITY
MICHAEL J. ASTRUE, Commissioner        )      DISABILITY APPEAL
of Social Security,                    )
                                       )
        Defendant.                     )
_____)

Plaintiff Robert J. Lawrence proceeds through counsel in his appeal of a final decision of

the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

denied plaintiff's applications for Supplemental Security Income (SSI) benefits after a hearing

before an Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the

administrative record (AR), and all memoranda of record, it is recommended that this matter be

REMANDED for further administrative proceedings.

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1954.[1] He completed the tenth grade and later obtained a

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

General Equivalency Degree.  Plaintiff previously worked as a janitor, kitchen worker, and packager.  He spent a total of nearly twenty-two years in prison, incarcerated for various intervals between 1970 and 1993.

Plaintiff protectively filed his SSI application on June 19, 2000.  (AR 16, 759.)  He alleged disability stemming from a traumatic brain injury he sustained as the victim of a beating while in prison in 1979, as well as a combination of other physical and mental impairments.  His application was denied at the initial level and on reconsideration, and he timely requested a hearing.  On April 18, 2002, ALJ Arnold Battise held a hearing.  (AR 586-628.)  ALJ Battise issued a decision finding plaintiff not disabled on July 22, 2002.  (AR 273-79.)

Plaintiff timely appealed.  The Appeals Council granted review and entered an Order of Remand on January 31, 2003.  (AR 280-82.)  The Appeals Council found no evidence to support the ALJ's step four finding, no rationale to reject the opinions of Drs. Anselm Parlatore and J.S. Stockburger or the limitations found in the state agency assessment, and an incomplete rationale in the evaluation of plaintiff's credibility.  (AR 281.)  The Appeals Council directed the ALJ to resolve whether plaintiff had any qualifying past relevant work, to give further consideration to the medical opinions of treating, examining, and non-examining sources, to re-evaluate plaintiff's credibility, and to reassess plaintiff at step four with the assistance of a vocational expert.  (AR 281-82.)

On October 21, 2002, plaintiff filed another SSI application, again alleging disability from the 1979 injury.  (AR 318-21.)  ALJ Battise considered this application concurrently with the remanded matter at a supplemental hearing held on December 12, 2003 (AR 629-90) and issued

official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  a second decision unfavorable to plaintiff on May 6, 2004 (AR 16-26).

02       Plaintiff timely appealed and the Appeals Council denied review.  Plaintiff sought review

03  in this Court, where the parties stipulated to a remand.  The Court remanded the matter to a

04  different ALJ, who was directed to obtain further evidence, to re-evaluate the record with specific

05  attention to the results of plaintiff's mental evaluation, to re-evaluate plaintiff's credibility and lay

06  witness testimony, and to make a new determination as to disability.  (AR 706-07.)  The Appeals

07  Council also issued its own remand order, dated November 14, 2005.  (AR 708-11.)  It found that

08  the ALJ's decision did not contain an adequate evaluation of the treating and examining

09  physicians' opinions, plaintiff's credibility, or plaintiff's mental impairments.  (AR 710-11.)  The

10  Appeals Council directed the ALJ to further consider the physicians' opinions, plaintiff's subjective

11  complaints, plaintiff's mental impairments in accordance with 20 C.F.R. 416.920a, and third party

12  statements/testimony.  (AR 711.)

13       Plaintiff filed a third SSI application on August 3, 2004, alleging disability beginning in

14  2000 and based on his head injury, Post-Traumatic Stress Disorder (PTSD), shoulder pain, and

15  seizures.  (AR 804-07.)    The Commissioner consolidated all three claims and, on remand,

16  assigned the case to ALJ Verrell Dethloff.  ALJ Dethloff held a third hearing on March 28, 2006.

17  (AR 720-55.)  He took testimony from plaintiff, medical expert Arthur Lewy, Ph.D., and

18  vocational expert (VE) Paul Tomita, M.Ed.  ALJ Dethloff issued a decision unfavorable to plaintiff

19  on May 26, 2006.  (AR 759-69.)  Given the previous court remand, ALJ Dethloff's May 2006

20  decision stands as the final decision of the Commissioner.  *See* 20 C.F.R. 416.1484 (a), (d)

21  (following a remand by a federal court, where no exceptions are filed and the Appeals Council

22  does not otherwise assume jurisdiction of the case, the decision of the ALJ becomes the final

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

decision of the Commissioner).  Plaintiff once again seeks judicial review.

### JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

### DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not engaged in substantial gainful activity since his alleged onset date.      At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's status post closed head injury with residual left-side weakness, bilateral shoulder tendonitis, cognitive disorder, and PTSD severe.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairment.  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff capable of medium-level exertional activities, compromised by some non-exertional limitations, and concluded he could perform his past relevant work as a janitor.  If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  Finding plaintiff not disabled at step four, the ALJ did not proceed to step five.

//

01   //

02   //

03        This Court's review of the ALJ's decision is limited to whether the decision is in

04   accordance with the law and the findings supported by substantial evidence in the record as a

05   whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

06   than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

07   mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

08   (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

09   decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

10   2002).

11        Plaintiff argues that ALJ Dethloff erred in assessing various physicians' opinions and in

12   assessing different conditions diagnosed by those physicians at steps two and three. Plaintiff also

13   asserts error in the ALJ's credibility and RFC assessments, in failing to address lay witness

14   testimony, and in his assessment of plaintiff's past relevant work at step four, including his reliance

15   on the VE's testimony. He seeks remand for an award of benefits or, alternatively, for further

16   administrative proceedings. The Commissioner argues that the ALJ's decision is supported by

17   substantial evidence, that any errors were harmless, and that the decision should be affirmed. For

18   the reasons described below, the undersigned concludes that this matter should be remanded for

19   further administrative proceedings.

20   Physicians' Opinions

21        In general, more weight should be given to the opinion of a treating physician than to a

22   non-treating physician, and more weight to the opinion of an examining physician than to a non-

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  Where the opinion of the treating physician is contradicted, and the non-treating physician's opinion is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating physician may itself constitute substantial evidence.  *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  It is the sole province of the ALJ to resolve this conflict.  *Id.*

"Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'"  *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)).  Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability.  *See, e.g., Schneider v. Commissioner of Social Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully developed and disability finding

01  clearly required).

02  However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

03  *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

04  were insufficient findings as to whether plaintiff's testimony should be credited as true).  As stated

05  by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

06  an undeserving, able claimant."  *Barbato v. Commissioner of Soc. Sec. Admin.*, 923 F. Supp.

07  1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

08  error, in that some of his stated reasons for rejecting a physician's opinion were legally

09
10  insufficient).

11  Plaintiff argues that, in this case, the ALJ failed to consider all of the medical evidence,

12
13  failed to correct the previous ALJ's errors, and erred in disregarding and/or rejecting medical

14  opinions by relying on the rationale provided in the previous ALJ's decisions.  The relevant

15  portions of the remand orders and ALJ Dethloff's discussion of those orders are excerpted below.

16  In its 2003 remand order, the Appeals Council found as follows:

17
18  The decision lacks rationale to reject the opinion of the treating and/or examining
    physician, A. Parlatore, M.D., for mental limitations . . . .  There is also no rationale
19  to reject the postural and manipulative limitations to the full range of light work in the
    state agency assessment or limitation to sedentary work given by Dr. Stockburger.
20
21  (AR 281 (internal citations to record omitted.)) The 2005 Appeals Council remand order stated

22  in relevant part:

23  The hearing decision does not contain an adequate evaluation of the treating and
    examining source opinions in the record.  The medical opinions from Dr. Parlatore
24  reflect multiple diagnoses without accompanying treatment records to support the
    changes of opinion.  Dr. Pham noted a left sided paresthesia and weakness with PTSD
25  and other musculoskeletal complaints and found the claimant capable of light work
    with the restriction of occasional lifting.  Dr. Alan G. Fitz performed a
26

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

neuropsychological exam on September 15, 2003 and found that he demonstrated at least average cognitive abilities for most areas assessed, including attention, concentration, visual scanning, processing speed, verbal and visual memory. Dr. Fitz diagnosed a mild cognitive disorder (NOS); major depressive disorder, mild and recurrent; post-traumatic stress disorder; and polysubstance dependence in remission and a [Global Assessment of Functioning (GAF)] of 50. Dr. Kathleen S. Mayers had seen the claimant on October 5, 2000 and found him to be capable of employment. Diagnoses made were of PTSD; polysubstance dependence; seizure disorder and a GAF of 61. Judgment, reasoning, common sense, memory skills, and social skills were all good. These findings are inconsistent with the reports from Dr. Parlatore and with the claimant's allegations. Further consideration of the examining and nonexamining opinions is needed prior to reaching a conclusion in this case.

(AR 710 (internal citations to record omitted.)) ALJ Dethloff subsequently responded to the remand order in stating:

The earlier decisions fully and adequately discussed the examinations by Dr. Pham, Dr. Parlatore, Dr. Fitz, and Dr. Mayers and, as the Appeals Council succinctly put it, a number of findings were inconsistent with the reports by Dr. Parlatore. The earlier decisions explored and explained these issues, as well as Dr. Parlatore's internal inconsistencies, lack of clinical support, and lack of knowledge. Those factors are reasonable in assessing medical opinions.

For example, Dr. Parlatore reported that the claimant had substance abuse problems, an antisocial disorder, and a seizure disorder with a number of marked and severe limitations. But those assessments were prepared on check-box forms without any reference to clinical findings for their support, and Dr. Parlatore's assessments were internally inconsistent with respect to diagnosis or limitations. Dr. Parlatore admitted that he never treated the claimant and only saw him briefly once a year for DSHS review, a factor suggesting very little support for his opinions. At Dr. Parlatore's examinations the claimant had intact mental status functioning, inconsistent with significant limitations.

Turning to other issues raised by the Appeals Council, the prior decision indicated that the claimant may have diagnoses of PTSD, depression and substance abuse, but the limitations imposed by these conditions are not as significant as alleged. Special attention was paid to the reports of Dr. Parlatore, and pointed out the inconsistencies and lack of credibility in his opinions, both internally and with the assessments and findings by other medical sources. Some of these inconsistencies are discussed above. Allan Fitz, Ph.D., performed a neuropsychological evaluation of the claimant, which noted only mild limitations at most; in general the claimant's functioning was average or better, contradicting Dr. Parlatore (who did not perform clinical testing) and also

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

contradicting Dr. Fitz' own conclusion that the claimant had marked social limitations interacting with supervisors.  Otherwise, Dr. Fitz' report, based on objective testing, is given a fair amount of weight.

(AR 763-64 (internal citations to record omitted.)) ALJ Dethloff thereafter assessed the medical information submitted following remand.  Where pertinent to an argument raised by plaintiff, that assessment is discussed below.

A.      Dr. Anselm Parlatore

In further considering Dr. Parlatore's opinions, ALJ Dethloff found as follows:

Dr. Parlatore examined the claimant again in May 2005, and the claimant regurgitated his past injuries and residual mental and physical problems.  Dr. Parlatore diagnosed PTSD, depressive disorder NOS, cognitive disorder per history, and a GAF of 40. He thought that the claimant had significant, symptomatic PTSD and cognitive deficits; although the GAF level is consistent with disability, Dr. Parlatore did not assess any limitations.  He did not support his opinion in any fashion, other than noting that the claimant seemed downcast and depressed.  Dr. Parlatore accepted the claimant's reported history at face value, apparently, but the claimant's mental status examination was intact within normal limits and Dr. Parlatore found no gross cognitive deficit.

This assessment is very typical for Dr. Parlatore, and suffers from the same inadequacies that were discussed with respect to his opinions heretofore: lack of objective clinical findings, consistency with intact mental status functioning, and naive acceptance of complaints at face value.  Overall, Dr. Parlatore's opinions are extravagant in nature and supported with very little clinical evidence, an [stet] contradicted by other medical opinions and observations.

One example is Dr. Paraltore's gratuitous observation that the claimant had "considerable deformity in his fingers, and thumbs, and considerable pain and dysfunction with his digits".  That observation is completely contradicted by physical examinations that have reported no difficulty with the claimant's hands other than thumb pain following an actual injury.  Dr. Parlatore seems to have advocated for the claimant, which raises the question about his medical performance.

Dr. Paraltore's earlier check-box assessment of February 1, 2002, is a case in point. There, he found marked limitations in all areas of functioning, consistent with a listing. He based that assessment on his "examination of October 13, 2001."  But a look at that examination report shows that he found only moderate limitations, without any

review of clinical or mental status findings. Further, the claimant's other clinical examinations and testing did not reveal any significant problem with cognition, social functioning, or daily activities.

A medical expert, Arthur Lewy, Ph.D., reviewed the record and attended the claimant's testimony at the most recent hearing. He commented on Dr. Fritz' report that found marked difficulties. Dr. Lewy concluded that this report showed the lack of consistency between the claimant's self-reports as opposed to other findings. He was uncertain as to how this could be resolved, but he noted that despite the claimant's plethora of symptoms he had excellent mental control and persistence. Some symptoms were reported in the record, but they were not "marked." The claimant's reported difficulty getting along with others was not described in the medical records. That testimony is reasonable, because although the claimant has referred to interpersonal problems, he presented as socially competent, even at Dr. Parlatore's examinations.

Dr. Lewy opined that one could suspect an anti-social personality disorder, but the evidence did not support this with "major rule violations" (he has a past history of prison time for felony offenses, however). He might have some narcissistic personality traits; this was shown by his over-reporting of problems. Otherwise, the claimant had restricted mood and signs of depression, but the Beck Inventory was only mild. That is consistent with the evidence of record. Dr. Lewy said that there were times when the claimant had mood "problems" but there was no support for his alleged symptoms with respect to objective findings. The claimant had a cognitive disorder with some thinking disturbance, and mood problems.

Turning to Dr. Parlatore's reports, Dr. Lewy said that there was no true evidence of a head injury; the neuropsychological report suggesting there could possibly be an earlier head injury, or substance abuse. Dr. Phan did not observe any strength differential as reported. Those reports support a finding that the claimant has a cognitive disorder of some type, possibly from a head injury at one time, but without any significant residuals.

Dr. Lewy determined that the claimant had a cognitive disorder and PTSD, with perceptual thinking disturbances. The claimant had discussed mood disturbance but that was not documented in the file. Dr. Lewy opined that the claimant had mild difficulty with daily living activities and moderate limitations in social functioning, concentration, persistence, and pace. There were no episodes of decompensation. The claimant's condition did not meet the "B" or "C" criteria of any listing. This assessment is consistent with the clinical neurological test findings and other credible medical examinations as discussed in the earlier decisions and above, and his statements are given substantial weight.

In light of this testimony I have not made a special effort to recontact Dr. Parlatore. And see my discussion supra. Dr. Parlatore is not a treating source. Moreover, it is the inadequacy of the record, rather than the rejection of the treating physician's opinion, that triggers the duty to recontact that physician. See, 20 CFR 416.912(e); 416.919a(b); Bayliss v. Commissioner, Social Security Administration, 427 F.3d 1211 (9 Cir. 2005); Thomas v. Barnhart, 278 F.3d 947 (9 Cir. 2002); White v. Massanari, 271 F.3d 1256 (10 Cir. 2001) (Citation omitted). See, Mayes v. Massanari, 276 F.3d 453, 459-60 (9 Cir. 2001 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). See Brown v. Heckler, 713 F.2d 441, 443 (9 Cir. 1983). The record in this case contains many medical records and other information which provide ample basis for an informed determination on the merits of claimant's allegations that he is disabled. See, Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004).

(AR 765-67 (internal citations to record omitted).)

Plaintiff asserts that ALJ Dethloff erroneously relied on rationale supplied by ALJ Battise, which was twice rejected by the Appeals Council. However, ALJ Dethloff's consideration of ALJ Battise's decision appears perfectly consistent with the Appeals Council's remand order – which found various findings in the record inconsistent with the reports from Dr. Parlatore and plaintiff's allegations. Also, as reflected above, while the ALJ did discuss and agree with the conclusions of ALJ Battise, he further considered the opinions of Dr. Parlatore in detail.

Plaintiff maintains that the additional reasoning provided by ALJ Dethloff is merely a regurgitation of ALJ Battise's rationale. Yet, plaintiff focuses almost entirely on ALJ Dethloff's initial discussion of Dr. Parlatore and the previous ALJ's decisions, rather than ALJ Dethloff's extensive subsequent discussion of Dr. Parlatore's opinions. Plaintiff's assertion that this discussion was simply a regurgitation of the rationale provided by ALJ Battise is not supported by a review of the decisions. (*Compare* AR 19-22, *with* AR 765-67.)

Plaintiff also argues that Dr. Parlatore's opinions were consistent with the opinions of

other physicians in the record.  He asserts that, in assessing some of these opinions, ALJ Dethloff misstates the record.  However, if anything, it is plaintiff who misstates the ALJ's findings.  For example, plaintiff objects to the ALJ's statement that Dr. Allan Fitz found only mild limitations, with average or better functioning.  Plaintiff notes that these findings related solely to cognitive functioning, and that Dr. Fitz assessed numerous moderate and marked limitations on his medical source statement and found plaintiff's "prognosis for increasing his independence and for employment . . . moderately to markedly reduced given the combination of his emotional and cognitive issues." (AR 557, 559-60.)  Yet, the ALJ was clearly describing the results of Dr. Fitz's neuropsychological evaluation and reasonably concluded that those results contradicted at least one of Dr. Fitz's conclusions on his medical source statement.  (*See* AR 556-57, 764.)  Plaintiff also asserts error in the ALJ's statement that Dr. Tedd Judd "did not report any clinical testing"(AR 765), pointing to a variety of Dr. Judd's findings (*see* AR 232-42).  However, ALJ Dethloff related this statement only to Dr. Judd's finding with respect to plaintiff's ability to tolerate work stress, not to his examination as a whole.  (*See* AR 765 ("However, the issue of stress management is an uncertainty because it was largely based on the claimant's subjective comments; certainly, Dr. Judd did not report any clinical testing; he may have relied on Dr. Fitz' assertion of marked difficulty with stress, but Dr. Fitz only speculated about that based on the claimant's past prison history[.]") (internal citation to record omitted.)) Plaintiff also points to Dr. William Coleman's opinions and complains that, while the ALJ purported to give them "some weight" (AR 764), he failed to include moderate to marked limitations assessed by Dr. Coleman in the RFC assessment.  However, plaintiff fails to support the inference that, simply because the ALJ gave some weight to an assessment from a physician, he was required to adopt all of the

01  limitations that physician assessed.

02      Nor do plaintiff's remaining arguments demonstrate error.  For example, the ALJ did not

03  rely solely on the opinions of non-examining physicians – either Dr. Kathleen Mayer or medical

04  expert Dr. Arthur Lewy – in rejecting the opinions of Dr. Parlatore.  Indeed, he only mentioned

05  Dr. Mayer in relation to the previous ALJ's assessment, and, while he did afford substantial weight

06

07  to the opinions of Dr. Lewy, he provided a number of other reasons for rejecting the opinions of

08  Dr. Parlatore.  (*See* AR 763-67.)[2]

09      In sum, plaintiff does not demonstrate that the ALJ's assessment of Dr. Parlatore was

10  insufficient or that his opinions should be credited as true.  Instead, ALJ Dethloff provided specific

11  and legitimate reasons supported by substantial evidence in his critique of the opinions of Dr.

12

13  Parlatore.

14  B.    Dr. Tedd Judd

15      Plaintiff also raises a separate argument with respect to Dr. Judd, asserting ALJ Dethloff

16  improperly rejected Dr. Judd's 2000 finding that plaintiff "has a disabling PTSD with depression

17

18  and anxiety."  (AR 242.)  He argues that this opinion should be credited as true.

19      However, plaintiff selectively quotes Dr. Judd's finding.  In 2000, Dr. Judd found as

20  follows:

21      In this screening neuropsychological testing Mr. Lawrence does not appear to be
       cognitively impaired to the point that he could qualify for disability.  However, he
22      clearly has a significant disability in his left hemiparesis.  Although this evaluation was
       primarily neuropsychological in nature and did not pursue emotional and personality
23

24  _____

25      [2] Plaintiff also argues that the ALJ failed to give legitimate reasons for rejecting Dr.
26  Parlatore's assessment of seizure disorder related to his head trauma, a diagnosis also reached by
    Dr. Mayer.  However, ALJ Dethloff noted, in considering the opinions of Dr. Parlatore, the lack
    of clinical findings to support the diagnosed seizure disorder.  (AR 764.)

issues in detail, it also appears that Mr. Lawrence has disabling PTSD with depression
and anxiety.  His physician may be able to complete a disability evaluation for him
based on these problems.

(*Id.*)  Therefore, Dr. Judd indicated that he did not focus on plaintiff's PTSD, depression, or

anxiety and, although speculating as to the severity of these conditions, he deferred a finding to

plaintiff's treating physician.  Dr. Judd also assessed a GAF of 55 in 2000, meaning moderate

symptoms or moderate difficulty in social, occupational, or school functioning.

Moreover, ALJ Dethloff focused on Dr. Judd's January 2005 records in his decision.  (*See*

AR 765 (discussing records at AR 896-99, 910.))  Plaintiff fails to demonstrate any reversible error

in the ALJ's assessment of those records.  As with the opinions of Dr. Coleman, although ALJ

Dethloff gave the 2005 assessments of Dr. Judd "a fair degree of weight[]" (AR 765), he was not

required to adopt all of the limitations assessed by this physician.

C.    Drs. Allan Fitz and William Coleman

Plaintiff similarly raises separate arguments as to Drs. Fitz and Coleman.  He maintains that

ALJ Dethloff failed to provide specific and legitimate reasons for rejecting Dr. Fitz's diagnoses

of major depression and likely personality disorder, and Dr. Coleman's diagnosis of personality

disorder.  He asserts that this also demonstrates error at steps two and three.  *See Smolen*, 80 F.3d

at 1290 ("An impairment or combination of impairments can be found 'not severe' only if the

evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's

ability to work.'") (quoting Social Security Ruling (SSR) 85-28); and 20 C.F.R. Part 404, Subpart

P, App. 1 (containing "Listing of Impairments" an ALJ must consider in determining whether

a claimant's impairments meet or equal one of the listed impairments at step three).

The Commissioner describes Dr. Fitz as equivocal on plaintiff's ability to work and Dr.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

Coleman as reporting in a less desirable check-box format.  However, without further elaboration, he  concedes error with respect to one or both of these physicians.[3]  Therefore, while it is not clear, the Commissioner may concede error in the ALJ's failure to specifically address the diagnoses of major depression and personality disorder at steps two and beyond.

ALJ Dethloff noted generally at step two that "[o]ther symptoms and conditions appear in the record from time to time," but found them "no more than transient and [not causing] significant limitations."  (AR 762.)  Also, he gave substantial weight to the opinions of medical expert Dr. Lewy, who found that the evidence did not support an anti-social personality disorder and who acknowledged signs of depression, but noted that "the Beck Inventory was only mild[]" and that mood disturbance was not documented in the file.  (AR 766-67.)  He gave "a fair amount of weight" to Dr. Fitz's opinions and "some weight" to the opinions of Dr. Coleman.  (AR 764.)

Because the Commissioner concedes error and because this case already warrants remand for the reasons described below, the undersigned concludes that the ALJ should directly address the diagnoses of major depression and personality disorder on remand.  However, the opinions of Drs. Fitz and Coleman should not be credited as true.  Plaintiff focuses largely on diagnoses made by these physicians.  However, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability. . . . [An impairment] must also have the *findings* shown in the Listing of that impairment."  *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985) (emphasis in original).  Plaintiff does not demonstrate that he has met his burden of proving the

---

[3] It is not clear whether the Commissioner concedes error with respect to one or both of these physicians in that he states: "Dr. Fitz was equivocal as to Plaintiff's ability to work, and Dr. Coleman's opinions appear to be in the less-preferred format of a check-box form. Nevertheless, the Commissioner concedes that the ALJ erred in his review of *this* doctor's opinion." (Dkt. 23 at 4-5 (emphasis added; internal citation to record and cited source omitted.))

01  existence of impairments meeting or equaling a listing.  *See Burch v. Barnhart*, 400 F.3d 676,

02  683 (9th Cir. 2005).  (*See also, e.g.,* AR 910 (Dr. Judd, in January 2005, opined: "I do not see him

03  as having a major depression at present[.]"))

04

05  D.    Dr. J.S. Stockburger

06        Plaintiff argues that ALJ Dethloff failed to consider the findings and opinions of treating

07  physician Dr. Stockburger.  He again asserts associated step two and three errors, pointing to

08  evidence from Dr. Stockburger as to a hand impairment with numbness and pain, as well as

09  chronic headaches.  (*See, e.g.,* AR 193-94, 199, 206, 376, 438-39, 476.)[4]  He also notes Dr.

10  Stockburger's 2002 opinion that plaintiff would be unable to work full time because of his

11  "psychological problems[,]" noting he "may be permanently disabled" and that "this would

12  probably be a disability due to psychiatric and/or neurological problems related to his head injury

13  and PTSD."  (AR 476.)

14

15        The Commissioner acknowledges that Dr. Stockburger found plaintiff more limited than

16  did the ALJ, including, in 2000, finding plaintiff limited to sedentary work.  (*See* AR 194.)

17  However, the Commissioner points to contrary evidence, including the recent opinion of

18  examining physician Dr. John Lesher, who found plaintiff could lift and carry 25-50 pounds, and

19  had no postural or manipulative limitations, nor any relevant visual, communicative, or workplace

20  limitations.  (*See* AR 895.)  He asserts that the ALJ appropriately exercised his duty to resolve the

21

22

23
_____

24        [4] Plaintiff also points to a report from examining physician Dr. Fred Darvill in November
     2000 as supporting his hand limitations.  (*See* AR 188.)  However, while Dr. Darvill found

25  "limited coin transfer from the left hand to the right hand [and] [d]ecreased sensation in the left
     hand[,]" he also noted that plaintiff's "right hand is normal for grasping and manipulating and

26  fine and dextrous movement[,]" and found plaintiff to be "quite capable of performing work
     related activities and motivated to do so." (AR 188-89.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -16

01 ambiguities in the medical record.

02        ALJ Dethloff does not mention Dr. Stockburger in his decision.  However, he does

03 incorporate the assessment in ALJ Battise's previous decisions.  (*See* AR 763.)  As noted above,

04 the Appeals Council directed ALJ Battise to consider the opinions of Dr. Stockburger on remand,

05 noting the absence of any rationale to reject the limitation to sedentary work assessed by this

06 physician in 2000.  (AR 281.)  On remand, ALJ Battise assessed Dr. Stockburger's opinions as

07

08 follows:

09       In November 2002, Dr. Stockburger examined the claimant.  He reported that the
10       claimant's residual head injury, PTSD, shoulder dislocations, and hepatitis C
         combined to limit him to light work, with additional restrictions imposed by a reduced
11       gait, normal strength, normal range of motion but with less-than-optimal shoulder
         flexibility, and only slightly decreased strength and fine motor skills on the left and
12       right upper extremities.  Those findings suggest that the claimant does not have
         significant physical restrictions.
13

14       . . .

15       Dr. Stockburger added that the claimant might be disabled, but that would be due to
16       psychiatric issues; the claimant would be able to work with his physical restrictions.
         That report is considered, but Dr. Stockburger did not elaborate on that general
17       comment, and the credible psychiatric reports do not suggest any disabling mental
         impairment.
18

19 (AR 21 (internal citations to record omitted.))

20        Plaintiff fails to demonstrate error with respect to Dr. Stockburger.  While the 2005

21 remand order from the Appeals Council did reflect the need for further consideration of

22 physicians' opinions, Dr. Stockburger was not among the several different physicians specifically

23 mentioned.  (*See* AR 710.)  ALJ Battise's assessment of Dr. Stockburger's opinions was sufficient.

24 Furthermore, in addition to incorporating this assessment, ALJ Dethloff relied on contrary

25

26 evidence, including the opinions of Dr. Lesher and state Disability Determination Service (DDS)

01
02
03
04
05
06
07
08

reviewers as to plaintiff's physical issues, and the opinions of Dr. Lewy and other DDS reviewers as to plaintiff's non-physical issues.  (AR 765-68.)  Additionally, while the ALJ did not mention a hand impairment or chronic headaches at step two, he generally found other symptoms mentioned in the record "no more than transient" or not causing significant limitations.  (AR 762.) He also later concluded that the "medical reports do not support a finding that [plaintiff] cannot use his hands."  (AR 768.)  As such, plaintiff also fails to demonstrate error with respect to these conditions at step two and beyond.

09
10
11
12
13
14
15

E.      Dr. Phan

        Plaintiff asserts that, in the 2005 remand order, the Appeals Council mentioned Dr. Pham because ALJ Battise ignored this physician's findings of left sided paresthesia and weakness which would limit plaintiff in the performance of a full range of light work.  (*See* AR 710.)  He adds that Dr. Pham found limitations in pushing and pulling in his upper extremities and in reaching in all directions, finding he could do the latter only occasionally.  (*See* AR 381-82.)

16
17
18
19
20
21
22
23
24
25
26

        Plaintiff misconstrues the Appeals Council's mention of Dr. Pham.  The Appeals Council stated: "Dr. Pham noted a left sided paresthesia and weakness with PTSD and other musculoskeletal complaints and found the claimant capable of light work with the restriction of occasional lifting."  (AR 710 (internal citation to record omitted.))  Yet, the Appeals Council cited these findings, as well as those from other physicians, as "inconsistent with the reports from Dr. Parlatore and with the claimant's allegations."  (*Id*.)  ALJ Dethloff recognized the distinction made by the Appeals Council and found that the earlier decisions "fully and adequately discussed" the records from Dr. Pham.  (AR 763.)  (*See also* AR 20 (ALJ Battise gave Dr. Pham's report "a fair degree of weight" in that "it suggests that the claimant could perform a broad range of light

work."))   Plaintiff fails to demonstrate that the ALJ erred in adopting ALJ Battise's assessment. However, Dr. Pham's findings as to limitations in pushing, pulling, and reaching are further addressed below.

Credibility and RFC Assessments

Plaintiff challenges the ALJ's credibility and RFC assessments.   Because the arguments blend into each other, they are addressed together below.

In its 2005 remand order, the Appeals Council found ALJ Battise's 2004 credibility decision deficient, stating:

> The hearing decision indicates . . . that the claimant's subjective complaints are not credible but does not address whether the claimant has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged and does not consider the following factors in evaluating the intensity, persistence and limiting effects of the alleged symptoms: medical opinions; prior work record; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication and other measures used to relieve symptoms.

(AR 711.)

On remand, ALJ Dethloff found that while "the claimant's medically determinable impairments could reasonably be expected to produce some symptoms," his "statements concerning the intensity, duration and limiting effects of his symptoms are not entirely credible." (AR 763.)   He subsequently incorporated the review and analysis of evidence in the prior decisions, discussed the issues raised by the Appeals Council, and reviewed additional medical evidence, before elaborating on his credibility finding as follows:

> As shown in the earlier decisions, there are concerns about the claimant's credibility, which are further found in this decision.   The claimant's medical reports do not support a finding that he cannot use his hands, he has no seizures, he is cognitively intact, he has normal gait, and substantial capacity to lift and carry objects.   He may

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01   be grumpy at times, but he is able to interact with others.

02   These reports suggest that the claimant has some limitations in functioning, but not
03   to the point of disability.  Other evidence also supports that conclusion.

04   The claimant said that he tried to exercise by walking, and spends time praying,
     reading, doing beadwork, and that he helped watch his sister's children from time
05   to time.  These reports show that he is indeed able to concentrate, move about, and
06   take social responsibility.

07   The claimant said that he had spent many years in prison for felony convictions.  He
     said that he continued to use marijuana on occasion.  These factors tend to impugn
08   his credibility, although he does not have any evidence of continued substance abuse
     or continued significant anti-social behavior.
09

10   The undersigned finds the claimant to be less than fully credible for reasons which
     include: (1) the claimant's manner and demeanor fail to convincingly convey
11   credibility; (2) the lack of objective findings substantiating his alleged symptoms and
     limitations; (3) claimant's ability to perform physical activities; (4) the results of
12   subjective testing within normal limits; (5) the claimant's continued range of daily
     activities and social functioning with family and friends; (6) the claimant's
13   complaints of increased symptoms despite normal objective testing; and (7) other
     factors discussed in this decision.
14

15   (AR 768.)

16       In assessing his RFC, the ALJ found plaintiff capable of performing up to medium work,
17
     including lifting no more than fifty pounds at a time, with frequent lifting of up to twenty-five
18
19   pounds.  (AR 762-63.)  The ALJ added: "He can frequently reach and push/pull with his arms and

20   occasionally crouch, crawl, bend, and stoop.  He can perform simple, repetitive work activity that

21   do [stet] not involve working with the public or close interaction with co-workers."  (AR 763

22   (emphasis removed.))

23       Plaintiff argues that the ALJ erred in rejecting his testimony as to his reaching limitations,
24
25   hand limitations, numbness, and pain, and failed to comply with the Appeals Council's directive.

26   He further notes that, although acknowledging that his "reported shoulder impairment has

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

continued, with some limitations with reaching, pushing, and pulling[,]" ALJ Dethloff found he could "frequently reach and push/pull with his arms[.]" (AR 763-64.)  He points to medical evidence supporting limitations in his ability to reach, push, and pull.  (*See*, *e.g.*, AR 382 (Dr. Pham found plaintiff limited in pushing and pulling in his upper extremities and in reaching in all directions, and capable of only occasional reaching) and AR 209 (reviewing physician Dr. Hoskins found plaintiff limited in reaching in all directions and stated: "Due to shoulder problems overhead work is precluded.  He has some decreased sensation in the left hand, so this is limited to occasional use when fine sensation is required.  Gross and fine manipulation is OK."))

Plaintiff also maintains that the ALJ improperly based the conclusion that he could perform medium exertional work solely on the opinion of examining physician Dr. Lesher.  Additionally, he  notes that the ALJ failed to include a limitation on interacting with supervisors, a limitation identified by multiple doctors.  (*See* AR 898 (Dr. Judd assessed a moderate degree of difficulty in interacting appropriately to coworkers and supervisors), AR 921-22 (DDS reviewer found plaintiff moderately limited in ability to accept instructions and respond appropriately to criticism from supervisors and noted "history of 'impulsive' behavior limits him to working where supervision can be structured."))

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  *See also Thomas*, 278 F.3d at 958-59.  In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81

F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

In this case, the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony and complied with the Appeals Council's directive. Although he did not address each and every factor identified by the Appeals Council – such as issues associated with plaintiff's medication – on the whole, his assessment was sufficient. However, on remand for other reasons, the ALJ's credibility assessment may be implicated and should be reassessed. Also, as discussed below, the Court finds the ALJ's RFC assessment problematic.

RFC is the most a claimant can do considering his or her limitations or restrictions. *See* SSR 96-8p. Although acknowledging that plaintiff's shoulder impairment has "continued, with some limitations with reaching, pushing, and pulling[,]" ALJ Dethloff included no such limitations in his RFC assessment, instead finding plaintiff capable of "frequently" reaching, pushing, and pulling with his arms. (AR 764.) This inconsistency should be addressed on remand. This issue also implicates the ALJ's decision as to plaintiff's past relevant work given that, as discussed below, with the inclusion of a limitation to "occasional" reaching, the VE testified that plaintiff could not perform his past relevant work as a janitor or custodian. (AR 749, 752-53.) The ALJ

01
02

should also take the opportunity on remand to clarify whether plaintiff's RFC assessment should

include a limitation on working with supervisors.

03
04

Lay Witness Testimony

05
06

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

to work is competent evidence. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

07
08

The ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each

witness. *See Smolen*, 80 F.3d at 1288-89 (finding rejection of testimony of family members

09
10

because, *inter alia*, they were "'understandably advocates, and biased'" amounted to "wholesale

dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a

11
12

reason germane to each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918

13

(9th Cir. 1993)). *Accord Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("[L]ay testimony

14

as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless

15

he or she expressly determines to disregard such testimony and gives reasons germane to each

16

witness for doing so.") Moreover, as recently found by the Ninth Circuit:  "[W]here the ALJ's

17

error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a

18

reviewing court cannot consider the error harmless unless it can confidently conclude that no

19

reasonable ALJ, when fully crediting the testimony, could have reached a different disability

20
21

determination." *Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

22

23

Both this Court and the Appeals Council directed the ALJ to reevaluate lay witness

24

testimony in the record on remand.  (*See* AR 706 (directing ALJ to "re-evaluate . . . the lay

25

witness testimony") and AR 711 (directing ALJ to: "Consider the third party statements/testimony

26

01 and provide rationale for the weight given to such evidence in accordance with Dodrill v.

02 Shalala.")) However, ALJ Dethloff failed to even mention the lay witness statements from

03 plaintiff's brother and mother.[5]   He did state that "[t]he evidence submitted with respect to the

04 earlier hearings was discussed in the prior decisions[,]" and that "[t]hat review and analysis [was]

05 incorporated" into his decision.  (AR 763.)  This statement arguably could be construed as ALJ

06 Dethloff accepting ALJ Battisse's determination that reports from plaintiff's brother and mother

07 were "based on frequent contact with" plaintiff and were "given substantial weight."  (AR 23.)

08 However, ALJ Dethloff was not specific as to what "evidence" he was referring to in making this

09 statement.  Moreover, even if he agreed with ALJ Batisse's assessment, ALJ Dethloff clearly failed

10 to follow the specific directive from this Court and the Appeals Council to reevaluate the lay

11 witness testimony.

14        This error requires remand for further administrative proceedings.  As found by ALJ

15 Battise, the statements do provide some testimony that could be construed as supporting plaintiff's

16 ability to function in a work environment.  (*See* AR 23.)  However, plaintiff's brother also attested

17 to plaintiff's depression and frustration, his tendency to drop and break dishes due to his physical

18 problems, his tendency to get tired easily and difficulty walking because of his limp, his

19 nightmares, and his sensitivity to noise and how people talk to him.  (AR 359-63.)  Plaintiff's

20 mother likewise attested to his frustration and depression, slow and difficult movements, sensitivity

21 to how people talk to him, and further stated: "Robert cannot do things, and it bothers him but he

23 don't complain much.  He's had nightmares about being beat with hammers and being stabbed,

---

[5] Plaintiff also points to statements from his social worker and counselor, but the citations to the record provided do not support the contention that these individuals provided lay witness testimony that should have been reevaluated on remand.  (*See* AR 80-85, 436.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -24

walks with a limp when upset. He is handicapped because of head injury." (AR 364-68.) Given these statements, the Court cannot conclude that no reasonable ALJ, fully crediting the testimony, could have reached a different determination.

Past Relevant Work

Plaintiff argues that the ALJ erred in finding he had past relevant work at step four. He further asserts error in the ALJ's reliance on the VE's testimony with respect to his past relevant work.

In considering plaintiff's capacity to perform past relevant work, the ALJ found as follows:

The claimant was born on January 8, 1954 and he has GED education. [stet] He has reported a long history of temporary work, with a hotel/motel custodian job for 3 months from 1999-2000, working for some type of hotel or resort. The issue of his past work was somewhat sketchy, but the prior decision concluded he had no past relevant work because he was not employed at substantial levels.

The claimant worked at the janitorial job from November 1999 to February 2000, during which he earned slightly over $1,000 per month on average. That is at substantial gainful levels for that brief period of time, although the work was not sustained for more than three months. He stated that he left this job because he did not feel that he was treated fairly and he did not like his boss.

The vocational expert, Paul Tomita, M.Ed., testified that the claimant's janitorial work, as he described it, was medium work at the SVP 4 or 3 levels (DOT 891.684-018 or DOT 382.664-010), and that three months was sufficient to learn the job. The claimant performed this job long enough to be considered past relevant work, and it was performed at substantial gainful levels while he was on the job.

In response to a hypothetical question which assumed an individual of the claimant's age, education and past relevant work, who retained the residual functional capacity described above, Mr. Tomita testified that such a person would not be able to perform the claimant's past relevant work because of his difficulty interacting with people.

Dr. Tomita's testimony is noted, but he was focused on the claimant's past employer, a hotel needing swimming pool maintenance and other tasks where interaction with the public would be commonplace. In comparing the claimant's residual functional capacity with the physical and mental demands of his past work as a janitor, however,

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -25

the undersigned finds that the claimant is able to perform it as it is generally performed.

Mr. Tomita indicated as much, stating that "another" job mentioned by the claimant was janitor (DOT 381[.]687-018), a medium or light occupation.  Mr. Tomita stated that the majority of janitorial jobs were actually light work.  Thus, even if the claimant had slightly greater limitations than determined in this matter, he would be able to perform his past work.

(AR 768-69 (internal citations to record omitted.))

A.    Past Relevant Work

Past relevant work is work (1) performed within the past fifteen years, (2) constituting substantial gainful activity (SGA), and (3) lasting long enough for the individual to have learned how to perform the work. 20 C.F.R. §§ 416.960(b)(1), 416.965(a).  The Commissioner considers average earnings in determining whether a claimant has or has not engaged in SGA.   *See* 20 C.F.R. § 416.974(b).

Plaintiff asserts that the ALJ's step four finding cannot be reconciled with his finding at step one.  At step one, the ALJ found plaintiff had "not engaged in [SGA] at any time relevant to [the] decision." (*See* AR 762 (emphasis and internal citation removed.))  He specifically noted that plaintiff's income from 1999 and 2000 "was at less than substantial levels[.]" (*Id.*)  Yet, he also stated: "However, this work activity is discussed in greater detail below." (*Id.*)  Plaintiff also asserts that the ALJ's step four finding conflicts with the 2003 remand order from the Appeals Council, which found that "[t]he current record indicates no job as [past relevant work] as defined in Social Security Rulings (SSR) 82-61, 82-62[]." (AR 281) (also stating: "For the relevant 15 year period, the claimant's earnings record shows minimal earnings in 1997, 1999 and 2000 of from $1563 to $1731 and even less in other years[.]"))

The Commissioner acknowledges the inconsistency in the ALJ's findings, but maintains

01  that plaintiff's 1999 to 2000 earnings while a janitor would have exceeded SGA levels.  (*See* AR

02  316 (plaintiff earned $1563.55 in 1999 and $1652.94 in 2000.))  He argues that the inconsistency

03  in the ALJ's decision should be considered harmless error.  *Cf. Batson v. Commissioner of the*

04  *Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding any error in credibility analysis

05  harmless in that it did not negate the validity of the ultimate conclusion reached).   The

06  Commissioner also points to the ALJ's reliance on the fact that plaintiff only left this janitorial

07  position based on his perception that he was not treated fairly by his boss, as well as the fact that

08  the VE testified that many janitorial positions were performed at only light exertional levels.  (*See*

09  AR 768-69.)

10

11

12       In response, plaintiff asserts that the ALJ's reliance on the reason he left the janitorial

13  position overlooks the fact that his disability arises in part from his mental impairments, which

14  result in limitations in tolerating other people, particularly supervisors.  (*See*, *e.g.*, AR 390, 560,

15  890.)  Plaintiff also reject's the ALJ's reliance on the VE testimony, which, as discussed below,

16  constitutes his second challenge to the ALJ's step four finding.

17

18       Although, technically, the ALJ may be correct that plaintiff's 1999 and 2000 earnings

19  reached substantial levels during that three month period, it is difficult to reconcile this conclusion

20  with the ALJ's step one finding, the statement in the Appeals Council's 2003 remand order, and

21  the 2004 findings of ALJ Battise (*see* AR 18 and 24 (finding no SGA at step one and no

22  substantial earnings/past relevant work at step four)).  The ALJ's reliance on why plaintiff left this

23  position does not remedy the issue and the VE's testimony is addressed below.  Also, it should

24  be noted that, if an individual worked only off-and-on for brief periods during the relevant

25  fifteen-year period, that work will generally not be considered past relevant work.  20 C.F.R. §

26

01   416.965.  For these reasons, on remand, the ALJ should further explain the discrepancy between

02   his step one and step four findings as to SGA.

03   B.    Vocational Expert's Testimony

04

05       Plaintiff first argues that the hypothetical posed by the ALJ failed to include all of his

06   exertional and nonexertional limitations.  He does not elaborate, instead pointing to arguments

07   made with respect to the opinions of various physicians.

08       A hypothetical posed to a VE must include all of the claimant's functional limitations

09   supported by the record.  *Thomas*, 278 F.3d at 956 (citing *Flores v. Shalala*, 49 F.3d 562, 520-71

10   (9th Cir. 1995)).  A VE's testimony based on an incomplete hypothetical lacks evidentiary value

11   to support a finding that a claimant can perform jobs in the national economy.   *Matthews v.*

12   *Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th

13   Cir. 1991)).  In this case, the above-described inconsistency with respect to plaintiff's shoulder

14

15   limitations needs to be clarified and appropriately addressed at steps four and/or five.

16       Plaintiff next asserts that the VE actually testified that a person with his limitations could

17   not work as a janitor.  That is, the VE testified that plaintiff could not perform his past relevant

18   work with the inclusion of a limitation on contact with the public and close interaction with

19   coworkers, a limitation the ALJ included in his hypothetical and RFC finding.  (*See* AR 749-50,

20

21   763.)  Plaintiff avers that the ALJ erred in finding that the VE focused only a limitation on

22   interacting with the public. (*See* AR 769.)  Plaintiff further points out that, as noted above, with

23   the inclusion of a limitation to "occasional" reaching, instead of the "frequent" reaching in the

24

25   ALJ's hypothetical, the VE testified that plaintiff could not perform the work of a janitor or

26

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -28

01  custodian.  (AR 749, 752-53.)[6]

02       As reflected above, the Commissioner notes the VE's testimony that many janitorial

03  positions are performed at only light exertional levels.  (*See* AR 750, 769.)  He further avers that

04  the ALJ reasonably assumed plaintiff could perform this work, whether characterized as past

05  relevant work at step four or as an adjustment to other jobs at step five.  He suggests that, at most,

06  any error should result in a remand for completion of the sequential evaluation process at step five.

07

08

09       The VE testified regarding two separate janitorial-type positions.  First, with respect to the

10  custodial work plaintiff performed at a hotel for three months in 1999 and 2000, the VE found two

11  job titles covered the work performed: (1) "swimming-pool servicer," DOT 891.684-018; and (2)

12  "janitor" (alternatively, "maintenance engineer"; "superintendent, building"), DOT 382.664-010.

13  (AR 748-49.)  As argued by plaintiff, and reflected in the ALJ's decision, the VE found plaintiff

14  would not be able to perform this work based on his difficulty in interacting with people.  (AR

15  749-50, 769.)  Second, when asked whether there were other jobs in the national economy plaintiff

16  could perform with the limitations as assessed in the RFC (including limitations on contact with

17  others), the VE pointed to another janitorial position, DOT number 381.687-018.  (AR 750.)  It

18  is not clear, but the VE seems to say that plaintiff mentioned this job previously, stating in full:

19  "– and he had mentioned it before, janitor. . . ."  (*Id.*)  As distinguished from the first janitorial

20  position considered, this position is titled "cleaner, industrial," with "janitor" as one of several

21

22

23

_____

24       [6] Plaintiff also points to a "Vocational Decision Worksheet" and asserts that this supports
the conclusion that the Commissioner at one point found him incapable of performing any past
25  relevant work.  (AR 369.)  He fails to provide any support for the contention that this 2003
administrative document could bind the ALJ in future decisions.  Also, it should be noted that
26  the document indicates plaintiff is capable of performing other work.  (*See id.*)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -29

alternative titles.  *Compare* DOT 381.687-018, *with* DOT 382.664-010.

This issue requires clarification.  Upon the VE's testimony that plaintiff could not perform his past relevant work, the ALJ posed a step five inquiry as to other jobs in the national economy and the VE responded accordingly.  (*See* AR 750.)  However, based on the VE's indication that the job was mentioned previously, the ALJ considered the job identified as also constituting past relevant work.  The ALJ needs to clarify whether plaintiff actually did perform this past relevant work and, if not, proceed to step five.

<u>Remand</u>

The Court has discretion to remand for further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari* 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77.

Plaintiff filed his first application for benefits almost seven years ago and has gone through three different hearings and two remands.  As asserted by plaintiff, this delay argues against remand for further proceedings.  *See Smolen*, 80 F.3d at 1292 (noting seven-year delay and additional delay posed by further proceedings); *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985) (noting administrative proceedings would only prolong already lengthy process and delay benefits).

01
02
03
04
05
06

However, the Court is not convinced that plaintiff is entitled to an award of benefits.  As indicated above, plaintiff fails to make a case for crediting the opinions of physicians, lay witnesses, or his own testimony as true.  Also, ALJ Dethloff never reached step five.  For these reasons, the Court concludes that this case should be remanded for further administrative proceedings.[7]

07

## **CONCLUSION**

08
09

For the reasons set forth above, this matter should be REMANDED for further administrative proceedings.

10

DATED this 4th day of June, 2007.

11
12
13
14

    /s/Mary Alice Theiler
Mary Alice Theiler
United States Magistrate Judge

15
16
17
18
19
20
21
22
23
24
25
26

_____

[7] The Court notes that it was extremely difficult to identify plaintiff's many different arguments in this case given that he lumped all but one of those arguments into a single lengthy section of his brief.  (*See* Dkt. 21 at 8-26.)  Plaintiff's counsel is reminded of his obligation to separately set forth his "contentions as to each and every issued raised[.]" (Dkt. 12 at 2.)  He is further advised that a failure to comply with this directive in future filings may result  in the Court's rejection of the briefing submitted.